UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| BRANDY TRAHAN | CASE NO. 2:17-CV-01478 |
| VERSUS | JUDGE CAIN |
| WAL-MART STORE INC ET AL | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment on Behalf of Wal-Mart" (Doc. #46) wherein defendant, Wal-Mart Louisiana, LLC[1] moves for summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56 on the basis that there is no genuine issue of material fact for trial. For the reasons that follow, the motion for summary judgment will be denied.

## FACTUAL STATEMENT

On October 15, 2015, Plaintiff, Brandy Trahan slipped and fell in a puddle of water near a Reddy Ice cooler at the front of the Wal-Mart Store in DeRidder, Louisiana.[2] Reddy Ice owned the ice cooler that leaked and was responsible for its maintenance.[3] Fifteen Wal-Mart employees passed near the water on the floor within 15 minutes prior to Trahan's fall.[4] Wal-Mart knew the ice coolers leaked and the leaks spread beyond the confines of the safety mat.[5]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for

---

[1] Erroneously named as Wal-Mart.
[2] Second Supplemental and Amended Complaint, Doc. #22.
[3] Defendant's exhibit I.
[4] Plaintiff's exhibit B, Affidavit of Jason T. English.
[5] Plaintiff's exhibit C, Beverly Rainwater depo. pp. 10-14.

identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *E.g., Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). In Louisiana, claims against merchants based on falls on the premises are governed by the Louisiana Merchant Liability Act ("LMLA"), Louisiana Revised Statute § 9:2800.6. To prevail, a plaintiff must prove the following (in addition to all other

elements of his claim): (1) a condition on the premises presented an unreasonable risk of harm; (2) this harm was reasonably foreseeable; (3) the merchant either created or had actual or constructive notice of the condition; and (4) the merchant failed to exercise reasonable care. La. Rev. Stat. § 9:2800.6(B); *White v. Wal-Mart Stores, Inc.*, 699 So.2d 1081, 1084 (La. 1997).

Wal-Mart argues that plaintiff's suit fails because she cannot satisfy the third element of the LMLA. "To survive a motion for summary judgment, a plaintiff must submit 'positive evidence' that a merchant created or had actual or constructive notice of the conditions that allegedly caused a plaintiff's damages." *Perez v. Winn-Dixie Montgomery, LLC*, 2019 WL 1367526, at *2 (E.D. La. Mar. 26, 2019) (quoting *Duncan v. Wal-Mart La., LLC*, 863 F.3d 406, 410 (5th Cir. 2017)). To show "constructive notice" under the LMLA, the plaintiff must prove "that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. Rev. Stat. § 9:2800.6(C)(1). An employee's presence near the condition "does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition." *Id.* Accordingly, plaintiff bears "an onerous burden" in satisfying this element of his claim. *Scott v. Dillard's, Inc.*, 169 So.3d 468, 472 (La. Ct. App. 5th Cir. 2015).

Wal-Mart maintains that Mrs. Trahan has failed to submit evidence of either actual or constructive notice. Wal-Mart relies on the deposition of Mrs. Trahan and her husband who both testified that they did not know how long the water had been on the floor.[6] Wal-Mart also relies on the deposition testimony of Wal-Mart employees, Beverly Rainwater (Store Manager) and Flora Pelt (Customer Service Manager), who Wal-Mart asserts provided no information as to the

---

[6] Wal-Mart exhibit C, B. Trahan depo. pp. 49-50; Wal-Mart exhibit D, Joshua Trahan depo. p.8.

3

source of the water[7] or how long it had been on the floor.[8] It is undisputed that the leaking Ready Ice cooler was the source of the water.[9] Wal-Mart also relies on screen shots of the area where Mrs. Trahan fell to support its allegation that there is no evidence that Wal-Mart knew that this Reddy Ice cooler was leaking or had leaked onto the floor prior to the accident.[10] Wal-Mart relies on the video surveillance, the screen shot, and Mrs. Trahan's deposition to suggest that the cooler could not have been leaking for more than two minutes at the time of the accident.[11] The video shows that two (2) minutes earlier, Mrs. Trahan walked in front of the cooler toward the ATM machine.[12]

Mrs. Trahan maintains that Wal-Mart knew that the ice machines were not leak-proof, and that they occasionally broke causing water to leak on the floor.[13] Rainwater testified that when the coolers leaked, the water would collect on the area outside of the safety mat placed in front of the ice cooler.[14] Mrs. Trahan complains that with this knowledge, Wal-Mart took no action to fix the problem. Mrs. Trahan suggests that Wal-Mart could have used larger safety mats, installed drains, new flooring and a temperature gauge, and/or moved the ice coolers outside.

Mrs. Trahan testified that even though she did not see where the water was coming from, she inferred that it came from the cooler because after her fall, a bystander mentioned to her that the ice was melting in the ice cooler.[15] She further testified that the size of the water was "one big puddle"[16] and that the water soaked through her clothing around her knee and leg.[17]

Mrs. Trahan also relies on the surveillance video and screen shots of the actual fall. She remarks that she fell several feet away from the ice cooler which would indicate that the puddle of

---

[7] Wal-Mart exhibit E, Rainwater depo., p. 35.
[8] Wal-Mart exhibit G, Pelt depo. p. 14-16
[9] Wal-Mart exhibit F, Vicki Dronet depo. pp. 35-36; Wal-Mart exhibit H, Reddy Ice's Responses to Wal-Mart's First Set of Discovery.
[10] Wal-Mart exhibit B.
[11] Wal-Mart exhibits A, B, and C.
[12] Trahan exhibit A, Clip 4.
[13] Trahan exhibit C, Rainwater depo. p. 10.
[14] *Id.* p. 14:5-9.
[15] Wal-Mart exhibit C, B. Trahan depo. p. 49: 7-15.
[16] *Id.* p. 52:24.
[17] Trahan exhibit D, B. Trahan depo. pp. 47-48 and 52.

4

water had traveled some distance.[18] Thus, one could easily infer that the ice cooler had been leaking for longer than 2 minutes. A review of the video further shows that the location of the water cooler was in a high traffic area at the front of the store, and that at least 15 Wal-Mart employees, including a Wal-Mart janitor, traveled in front of the cooler within a 15-minute period just prior to Mrs. Trahan's fall. Mrs. Trahan complains that even though Wal-Mart employees are trained to look for hazards,[19] and Wal-Mart was aware that the ice coolers had leaked in the past, Wal-Mart failed to exercise reasonable care to keep the condition of the floor reasonably safe. Thus, Wal-Mart created an unreasonable risk of harm to patrons, and that risk of injury was reasonably foreseeable. *See Carter v. Brookshire Grocery*, 690 So.2d 933 (La. App. 2 Cir. 2/26/97).

Mrs. Trahan also provides the Affidavit of Jason T. English,[20] a professional engineering consultant, who primarily consults in the field of safety engineering, including workplace safety, premises safety, product safety, safety management and human factors ergonomics. Mr. English used standard accident investigation methodology to review the deposition testimony,[21] Second Supplemental and Amending Petition for Damages, Wal-Mart's and Reddy Ice's answers and responses to discovery, and store surveillance video and photographs from the date of the incident. Mr. English opined that Wal-Mart failed to conduct an effective visual safety inspection of the high hazard ice merchandiser area during a 2-hour high traffic time period,[22] and the evidence indicates that the water was most likely created by melting ice due to the unit not maintaining adequate temperature, and/or excessive condensate from the cooling process.[23] More significantly, Mr. English opined that "it would take a significant period of time to produce the amount of water

---

[18] Trahan exhibit A, Clip 4, at approximately 12:56 p.m.
[19] Trahan exhibit B, Affidavit of Jason T. English; Trahan exhibit C, Rainwater depo. p. 18:3-15.
[20] Trahan exhibit B.
[21] Brandy Trahan, Joshua Trahan, Beverly Rainwater, Vickie Drone and Flora Pelt.
[22] Trahan exhibit B, English aff., p. 9, ¶ 36.
[23] *Id.* ¶ 38.

5

shown on the floor at the time of Mrs. Trahan's fall, as indicated in the scene photos and the cleanup process viewed on the surveillance video, which ultimately included the mopping of a large area where Mrs. Trahan fell, along with the ultimate removal of the large mat in front of the merchandiser and mopping of water that had accumulated beneath such mat.[24]

The Court finds that even though Mrs. Trahan cannot show exactly how long the water was on the floor prior to her fall, there is enough evidence to create a genuine issue of fact for trial as to whether the water was on the floor for such a period of time that it would have been discovered if the merchant had exercised reasonable care."[25] Furthermore, Mrs. Trahan has submitted sufficient summary judgment evidence for trial as to whether Wal-Mart failed to exercise reasonable care.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by Wal-Mart will be denied.

**THUS DONE AND SIGNED** in Lake Charles, Louisiana on this 24 day of July, 2019.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE

---

[24] *Id.*
[25] La. Rev. Stat. § 9:2800.6(C)(1).